# United States Court of Appeals for the Federal Circuit

2008-5117

RONALD C. PRATI and MARY G. PRATI,

Plaintiffs-Appellants,

v.

UNITED STATES,

Defendant-Appellee.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

2008-5129

EDWARD J. DEEGAN and JOAN S. DEEGAN,

Plaintiffs-Appellants,

v.

UNITED STATES,

Defendant-Appellee.

Thomas E. Redding, Redding & Associates, P.C., of Houston, Texas, argued for all plaintiffs-appellants. With him on the brief were Sallie W. Gladney and Teresa J. Womack.

Deborah K. Snyder, Attorney, Tax Division, United States Department of Justice, of Washington, DC, argued for defendant-appellee. With her on the brief were John A. DiCicco, Acting Assistant Attorney General, and Michael J. Haungs, Attorney.

Appealed from: United States Court of Federal Claims

Judge Lawrence J. Block

# United States Court of Appeals for the Federal Circuit

2008-5117

RONALD C. PRATI and MARY G. PRATI,

Plaintiffs-Appellants,

v.

UNITED STATES,

Defendant-Appellee.

Appeal from the United States Court of Federal Claims
in 02-CV-060, Judge Lawrence J. Block.

--------------------------------------------

2008-5129

EDWARD J. DEEGAN and JOAN S. DEEGAN,

Plaintiffs-Appellants,

v.

UNITED STATES,

Defendant-Appellee.

Appeal from the United States Court of Federal Claims
in 06-CV-594, Judge Lawrence J. Block.

_____

DECIDED:  May 5, 2010

_____

Before RADER, BRYSON, and MOORE, <u>Circuit Judges</u>.

BRYSON, <u>Circuit Judge</u>.

These two federal tax cases raise complex questions pertaining to the taxation of transactions involving partnerships. Our analysis is relatively straightforward, however, because prior decisions of this court in related cases have dealt with and resolved several of the issues that are before us in these cases. Those decisions largely dictate the results we reach here.

I

The dispute in these cases relates to a number of limited partnerships managed by American Agri-Corp ("AMCOR"), a corporation that promoted tax shelter partnerships during the 1980s. The partnerships were designed to generate a large loss in the first year, allowing each partner to claim a tax deduction averaging twice the size of his investment, with the excess loss to be recaptured in subsequent years. Appellant Ronald Prati and his wife invested in three of the AMCOR partnerships, while appellant Edward Deegan and his wife invested in another AMCOR partnership. In 1985, the partnerships filed tax returns claiming an ordinary loss deduction; the Pratis and the Deegans used those losses on their individual tax returns to offset their taxable income for that year.

The Internal Revenue Service began investigating the AMCOR partnerships in 1987. It subsequently issued Notices of Final Partnership Administrative Adjustment ("FPAAs") to 43 partnerships in 1990 and 1991 with respect to their 1985 returns. The FPAAs disallowed the deductions for several reasons, including that the partnership activities constituted a series of "sham transactions."

Representatives of the partnerships challenged the FPAA disallowances in partnership-level proceedings before the Tax Court pursuant to 26 U.S.C. ("I.R.C.") § 6226(b). Among the issues litigated was whether the adjustments were barred by the statute of limitations. The parties selected a number of test cases, and each partnership signed a "Stipulation to be Bound" in which it agreed that "the outcome of the statute of limitations issue present in this Partnership Case will be determined in a manner consistent with the [Tax] Court's findings of fact and law on the statute of limitations issue present in the Test Case Group case of Agri-Venture Fund." In 2000, the Tax Court rejected the statute of limitations defense in the test cases, finding that one of the partnerships had failed to file a valid partnership return and that the other four had validly agreed through their tax matters partners ("TMPs") to extend the time period pursuant to I.R.C. § 6229(b). See Agri-Cal Venture Assocs. v. Comm'r, 80 T.C.M. (CCH) 295 (2000).

While those partnership-level suits were pending, some partners (including the Pratis) chose to settle their partnership items. The IRS accepted those settlements in April 1997 and assessed the applicable taxes and interest. As part of the assessment, the IRS sought additional interest pursuant to former I.R.C. § 6621(c), a special interest provision for "substantial underpayments attributable to tax motivated transactions." That statute defined "tax motivated transactions" to include "any sham or fraudulent transaction." I.R.C. § 6621(c)(3)(A)(v) (repealed 1989). After paying the assessments in full, the Pratis filed partner-level administrative refund claims with the IRS in April 1999. The IRS disallowed those refund claims as precluded by I.R.C. § 7422(h), which

provides that "[n]o action may be brought for a refund attributable to partnership items." In 2002, the Pratis filed a refund action in the Court of Federal Claims.

Meanwhile, in 2001, the IRS moved under Tax Court Rule 248(b) for entry of decision in the remaining partnership cases. The IRS's motion represented that the IRS and the TMPs for the AMCOR partnerships had reached contingent agreements with respect to all the disputed partnership items, and that all partners meeting the interest requirements of I.R.C. § 6226(d) would be deemed parties bound by the entered decisions. In accordance with that motion, the Tax Court entered stipulated decisions on July 19, 2001. The IRS then assessed taxes and section 6621(c) interest against those partners who had not settled with the IRS (including the Deegans). The Deegans paid the assessments in full and then filed administrative refund claims with the IRS in 2004. The IRS disallowed the claims, and the Deegans filed suit in the Court of Federal Claims in 2006.

A total of 129 AMCOR-partnership tax refund cases were filed by various taxpayers in the Court of Federal Claims. Of those, the taxpayers identified 77 as being factually and legally similar. The parties selected the Prati case to serve as a representative case, and the trial court stayed the remaining 76 of the 77 similar cases pending its decision in that case.

In Prati, the taxpayers raised two primary claims for relief: first, that the assessments were untimely because they were made after the statute of limitations had expired; and second, that the assessments of section 6621(c) interest were improper because the partnership transactions at issue were not tax-motivated transactions. The government responded that in light of the prohibition in section 7422(h) against bringing

a refund action for a refund "attributable to partnership items," the trial court lacked jurisdiction to hear either claim because both claims were partnership items that should have been challenged in the partnership-level proceeding instead of in partner-level proceedings.

In April 2008, the trial court dismissed the Pratis' claims for lack of subject matter jurisdiction pursuant to section 7422(h). The court also ordered the dismissal of the 76 cases that the parties had identified as presenting identical claims, including the Deegan case. The court relied heavily on the reasoning in Keener v. United States, 76 Fed. Cl. 4455 (2007), which had already considered the same claims in the context of section 7422(h) and which was on appeal to this court at that time.

Following the trial court's decision in Prati, the taxpayers filed a motion for reconsideration requesting, inter alia, that the judgments be vacated in all 77 related cases. They asserted that the cases should either be stayed pending this court's decision in Keener, which the taxpayers stated would be "binding" on all 77 cases, or be consolidated so that the cases could proceed as a single appeal. They argued that doing so would avoid unnecessary appeals and preserve the resources of the parties and the court. The trial court denied the motion.[1]

The taxpayers filed appeals in 57 cases and then moved to stay those appeals pending this court's decision in Keener.[2] In support of that motion, the taxpayers again

---

[1]    The trial court vacated the judgments in 17 cases in which the parties stated that additional case-specific claims were presented, but only "for the limited purpose of allowing plaintiffs to pursue any unresolved, case-specific claims that may still be outstanding."

[2]    Two of those appeals were subsequently dismissed for lack of appellate jurisdiction on an unopposed motion by the government.

expressed their belief that "this Court's holdings in <u>Keener</u> should resolve the jurisdictional issues on appeal in all 58 cases." The motions to stay were granted.

On January 8, 2009, this court issued its opinion in <u>Keener</u> affirming the dismissal of the plaintiffs' claims for lack of jurisdiction. <u>Keener v. United States</u>, 551 F.3d 1358 (Fed. Cir. 2009). The government then moved for summary affirmance in all the related cases. This court denied the government's motions without prejudice, so as to permit the taxpayers to present argument as to why <u>Keener</u> should not control the disposition of the remaining cases. We lifted the stays in <u>Prati</u> and <u>Deegan</u> to permit them to proceed as representative of cases involving settling partners and non-settling partners, respectively.

II

At the outset, the government argues that these appeals are barred by judicial estoppel (as to both the Pratis and the Deegans) and waiver (as to the Deegans). The government's argument is based on the way the parties litigated the large number of related AMCOR-partnership tax refund cases.

The taxpayers represented that <u>Keener</u>, <u>Prati</u>, and all the other AMCOR-partnership tax refund cases now on appeal before this court were indistinguishable with respect to the jurisdictional issues presented in those cases, and that this court's decision in <u>Keener</u> would resolve those issues conclusively. The government contends that the taxpayers should not be allowed to alter their position now that <u>Keener</u> has been decided and has rejected the arguments made by the taxpayers in that case.

We see no basis for judicial estoppel here. The Pratis and the Deegans reasonably expected that the <u>Keener</u> case would resolve the jurisdictional issues raised

in these appeals. A representation that a pending case should be dispositive, however, does not deprive parties of the right to argue that the ensuing decision failed to settle all the issues to be resolved in their case. To apply judicial estoppel in cases such as these would raise the specter of forfeiture of appellate rights whenever a party requests a stay to allow a "representative" case to go forward separately for the purpose of resolving issues common to all of the related cases. See Whiting v. Krassner, 391 F.3d 540, 543-44 (3d Cir. 2004) (party's request for a stay based on the likelihood that his claim would be held to be moot "is not the type of 'position' that should work an estoppel," where the position was not asserted in bad faith and was "more predictive than assertive"); Bendet v. Sandoz Pharms. Corp., 308 F.3d 907, 910 (8th Cir. 2002) (party that sought a stay based on an assertion that its evidence was "essentially the same" as the evidence in another case, was not judicially estopped from seeking to distinguish the other case after an adverse decision in that case).

The government also argues that the Deegans waived their right to argue that their case is distinguishable from the Pratis' case because the Deegans did not raise any such distinction before the Court of Federal Claims. In particular, the government contends that the Deegans did not argue that their case differs from the Pratis' case in that the Pratis entered a settlement while the Deegans did not. It is true that the non-settling partners did not argue before the Court of Federal Claims that their legal status was different from that of the settling partners. Instead, the taxpayers in all of the related cases proceeded on the assumption that their claims would be resolved by legal rulings that would apply equally to the settling and non-settling partners.

This court's decision in <u>Keener</u> rejected the principal arguments raised by the taxpayers in all of the related cases. In the Deegans' view, however, this court's opinion in <u>Keener</u> was narrower than the trial court's opinion in that case and thereby gave rise to a potential ground for distinguishing their claims from those of the settling partners. Under those circumstances, and in light of this court's direction that briefing and argument proceed in both the <u>Prati</u> and <u>Deegan</u> cases so as to address any issues raised by the different legal status of the settling and the non-settling partners, we do not find that the failure to draw that distinction in the trial court resulted in a waiver of appellate rights.

III

Turning to the merits, the appellants argue that this court's decision in <u>Keener</u> did not resolve the statute of limitations claim and the section 6621(c) interest issue as applied to these cases. In particular, they argue that section 7422(h) does not bar them from litigating those two issues in the refund proceedings in the Court of Federal Claims. We disagree.

Congress enacted the Tax Equity and Fiscal Responsibility Act of 1982 ("TEFRA"), Pub. L. No. 97-248, § 402(a), 96 Stat. 648, in order to promote consistent tax treatment of partners and to avoid duplicative litigation. Under TEFRA, the tax treatment of "partnership items" is determined in a single partnership-level proceeding. Section 7422(h) of the Code enforces that principle by prohibiting partners from bringing individual actions "for a refund attributable to partnership items . . . ." A partnership item is defined as

> any item required to be taken into account for the partnership's taxable year under any provision of subtitle A to the extent regulations prescribed

by the Secretary provide that, for purposes of this subtitle, such item is more appropriately determined at the partnership level than at the partner level.

I.R.C. § 6231(a)(3).

In <u>Keener</u>, the court found that the taxpayers' statute of limitations claim was "attributable to a partnership item" and therefore was barred by section 7422(h) from being litigated in a refund action. The <u>Keener</u> court rejected the taxpayers' argument that "the provisions relevant to this claim—namely, §§ 6229(a) and 6501—are found in subtitle F of the code, rather than subtitle A, [and so] the claim cannot be considered a partnership item by definition." 551 F.3d at 1363. Because the court concluded that the statutory definition of "partnership item" was ambiguous, it looked to the definition of "partnership item" in the Treasury regulations. That definition provides that partnership items include "the legal and factual determinations that underlie the determination of the amount, timing, and characterization of items of income, credit, gain, loss, deduction, etc." Treas. Reg. § 301.6231(a)(3)-1(b). The <u>Keener</u> court found that definition to be a permissible interpretation of the statutory language and thus entitled to deference under <u>Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.</u>, 467 U.S. 837 (1984). Applying that definition to the case before it, the <u>Keener</u> court concluded that the definition was broad enough to encompass the taxpayers' statute of limitations claims. That result, the court noted, was consistent with "TEFRA's dual goals of centralizing the treatment of partnership items and ensuring the equal treatment of partners." 551 F.3d at 1363-64 & n.3.

The <u>Keener</u> court also rejected the taxpayers' argument that section 6621(c) interest should not have been assessed against them because the transactions for

which that interest was imposed were not "tax motivated transactions," as required by section 6621(c). The court observed that determining whether a particular partnership transaction is tax motivated, and specifically whether it is a "sham" transaction, turns on "the nature of the partnership's transaction," which is a partnership item. 551 F.3d at 1366. Accordingly, the court concluded that the taxpayers' challenges were "attributable to partnership items," and thus that section 7422(h) barred those challenges from being litigated in a refund action.

The Keener court also dismissed the taxpayers' contention that, by issuing FPAAs that listed multiple, independent grounds for disallowance—some that qualified as tax motivated and some that did not—the IRS failed to make any conclusive determination as to whether the partnerships' transactions were tax motivated. The court observed that, even assuming the taxpayers could raise their section 6621(c) claims in the refund proceeding, their argument would be unpersuasive because the IRS's inclusion of additional grounds for disallowance of their deductions did not somehow undermine its determination that the transactions at issue were tax motivated. Keener, 551 F.3d at 1367 (it would be inequitable "to impose penalty interest when a deduction is disallowed because the partnerships' transactions were tax motivated, but not to impose penalty interest when that deduction is also disallowed on other inseparable grounds").

A

The appellants argue that the decision in Keener does not resolve their statute of limitations claim because they raised two independent limitations claims, under I.R.C. § 6229 and I.R.C. § 6501 respectively, and Keener dealt only with the section 6229

claim. For that reason, they assert, <u>Keener</u> did not bar the defense predicated on section 6501. Section 6501, the general statute of limitations for tax assessments against individuals, gives the IRS three years to issue an assessment from the date the taxpayer's return is filed. For partnership items, section 6229 extends that period to three years after the later of (1) the date on which the partnership return is filed, or (2) the last day for filing the partnership return for a taxable year.

The appellants base their argument on this court's recent decision in <u>AD Global Fund, LLC v. United States</u>, 481 F.3d 1351 (Fed. Cir. 2007), which held that section 6229 "does not create an independent statute of limitations." <u>Id.</u> at 1354 & n.2. According to the appellants, the significance of that holding is that section 6501 is the only applicable statute of limitations, so that a court presented with a statute of limitations defense may look only to the three-year period provided by section 6501. The section 6229 time extension is not invoked, they argue, unless it is separately asserted by the government.

We disagree with the appellants' argument. Sections 6501 and 6229 operate in tandem to provide a single limitations period. When an assessment of tax involves a partnership item or an affected item, section 6229 can extend the time period that the IRS otherwise has available under section 6501 to make that assessment. <u>See</u> <u>Andantech L.L.C. v. Comm'r</u>, 331 F.3d 972, 976-77 (D.C. Cir. 2003); <u>Grapevine Imports, Ltd. v. United States</u>, 71 Fed. Cl. 324, 328-39 (2006). Thus, the limitations period is the period defined by section 6501, as extended when appropriate by section 6229. Sections 6501 and 6229 do not operate independently to allow a taxpayer to assert one in isolation and thereby render an otherwise timely assessment untimely.

In Keener, the court's reasoning was directed to the statute of limitations defense as a general matter and was not limited, as the appellants contend, to section 6229. Although the Keener court referred to section 6229 and did not mention section 6501, it is clear, given the interaction between sections 6501 and 6229, that the court's reference to section 6229 was merely a shorthand way of referring to the taxpayers' overall statute of limitations claim. Thus, the Pratis and Deegans cannot distinguish their cases from Keener on the ground that Keener did not discuss section 6501.[3]

Based on Keener, we hold that the statute of limitations issue is a partnership item and that the Pratis and the Deegans were required to raise the limitations issue in the partnership-level proceeding prior to either entering settlement or stipulating to judgment in the Tax Court.[4] They did not do so, and we therefore affirm the trial court's

---

[3]    Nor is there any merit to the Pratis' argument that their settlement agreements with the IRS were comprehensive and "had no provisions extending the § 6501 assessment period," because, as explained above, section 6229 does not operate independently from section 6501.

[4]    The appellants argue that they could not participate in the partnership-level proceeding because that action was instituted after the statute of limitations had expired as to each of them, and also because individual partners were barred from raising statute of limitations claims in partnership-level proceedings until such a procedure was expressly permitted by a 1997 amendment to the Code. See Taxpayer Relief Act of 1997, Pub. L. No. 105-34, § 1239(f), 111 Stat. 788, 1028. We reject both arguments. As for the appellants' argument that they were barred from participating in a proceeding to decide whether the statute of limitations had run because the statute of limitations had already run, that argument is circular and has no merit. As for their latter contention, the 1997 amendment merely codified prior practice in the Tax Court; the appellants, as individual partners, were therefore free to participate in the partnership-level proceedings to litigate the statute of limitations issue. See Rhone-Poulenc Surfactants & Specialties, L.P. v. Comm'r, 114 T.C. 533, 535 (2000) ("[W]e have held that a partner may participate in such action for the purpose of asserting that the period of limitations for assessing any tax attributable to partnership items has expired and that we have jurisdiction to decide whether that assertion is correct."); Columbia Bldg., Ltd. v. Comm'r, 98 T.C. 607 (1992).

ruling that section 7422(h) bars them from raising their statute of limitations claims in the refund proceedings.

B

The appellants next contend that <u>Keener</u> did not address or resolve the particular grounds on which they now challenge the penalty interest imposed against them under former section 6621(c).

One of the significant omissions in <u>Keener</u>, according to the appellants, was the court's failure to address Treasury Regulation § 301.6621-2T, A-5. That regulation explains how to determine the amount of an underpayment that is tax motivated, which is the amount subject to penalty interest. The calculation is performed by starting with the total tax liability, taking into account all adjustments, and subtracting the amount of tax liability "[w]ithout taking into account any adjustments . . . that are attributable to tax motivated transactions." That difference yields the amount of the "tax motivated underpayment," an amount that includes any adjustments that are "attributable" to tax-motivated transactions.

The appellants contend that the Treasury regulation, as properly applied, permits section 6621(c) interest only with respect to underpayments that are "solely attributable" to a tax-motivated transaction. The Pratis, who entered into a settlement with the IRS resolving their partnership items, state that the settlement they entered did not identify the grounds for disallowance, so the settlement must be deemed to have incorporated all of the grounds listed in the FPAA. Because the finding of sham was only one of many reasons for disallowance, they argue, the underpayments were not "solely

attributable" to tax-motivated transactions. Accordingly, they conclude, section 6621(c) interest should not have been imposed on them.

The problem with the appellants' argument is that the court in Keener held that a dispute over the "characterization of a partnership's transaction is a partnership item." 551 F.3d at 1365. The appellants seek to distinguish their claim by characterizing it not as a "direct challenge to sham" but instead as a "merits based defense as to why Treasury Regulation § 301.6621-2T, A-5 was allegedly not violated." But that contention is disingenuous because the appellants' regulation-based argument, if accepted, would invalidate the determination that the partnerships' transactions were tax motivated. That determination, which flowed directly from the finding of sham, is equally tied to the nature of a partnership's transaction. Because the appellants' challenge to the penalty interest assessments is inherently a dispute over the proper characterization of the partnerships' transactions, that issue is barred by section 7422(h) from being litigated in the refund action before the Court of Federal Claims.

The Pratis also maintain that the settlements they entered were comprehensive and that those settlements did not include any determinations as to the nature or characterization of the partnerships' transactions. To the extent they are disputing the finding that those transactions were tax motivated, that line of argument remains barred by section 7422(h). To the extent they are suggesting that the settlement had the effect of converting all partnership items into non-partnership items and that they are thus entitled to challenge the penalty interest assessments in individual refund actions, that argument runs afoul of another one of this court's recent AMCOR-partnership decisions, Schell v. United States, 589 F.3d 1378 (Fed. Cir. 2009). In that case, which involved

similar settlement agreements, we held that, notwithstanding the settlements, "the sham-transaction issue was not converted into a non-partnership item, and the Taxpayers' refund claims necessarily involve resolution of 'partnership items.'" Id. at 1383-84.

The Deegans, whose claims were resolved by a stipulated decision in the Tax Court, argue separately that the stipulated decision attributed the disallowance of their deduction to a "lack of economic substance" in the underlying transaction, which the Deegans argue is different from a "sham transaction." Again, however, that argument is directed to the nature of the partnership transaction and therefore is barred by section 7422(h) from being raised before the Court of Federal Claims. Moreover, the Deegans' argument that the Court of Federal Claims mischaracterized the Tax Court's decision, and that the penalty issue remains open for decision in the refund action, is rebutted by the text of the stipulated decision itself. The Tax Court's decision clearly equated lack of economic substance with "sham transaction" by specifically citing I.R.C. § 6621(c)(3)(A)(v), the provision that defines tax-motivated transactions as including "any sham or fraudulent transaction."

For the foregoing reasons, we sustain the decision of the Court of Federal Claims dismissing the appellants' claims in both cases.

AFFIRMED.